◼ Susan Newman Loehr, Appellant-Respondent, v New York State Unified Court System et al., Respondents-Appellants [57 NYS3d 40]—

Appeal from an order of the Supreme Court, Westchester County (Donald F. Cerio, Jr., J.), entered July 6, 2012, and appeal and cross appeal from an order and judgment (one paper) of that court entered August 29, 2014. The order and judgment, insofar as appealed from, among other things, dismissed so much of the amended complaint/petition as sought a lump sum payment representing an increase in the salary of the plaintiff/petitioner for the period of April 1, 2011, through March 29, 2012, and insofar as cross-appealed from, among other things, awarded the plaintiff/petitioner a lump sum payment representing deferred compensation for the period of April 1, 2008, through March 31, 2011.

Ordered that the appeal from the order is dismissed as abandoned, without costs or disbursements; and it is further,

Ordered that the order and judgment is modified, on the law, (1) by deleting the provision thereof granting that branch of the defendants/respondents' cross motion which was for summary judgment dismissing so much of the amended complaint/petition as sought a lump sum payment for the difference between the compensation to which the plaintiff/ petitioner would have been entitled and the compensation she actually received during the period of April 1, 2011, through March 29, 2012, and as sought to annul the related portion of the determination of the defendant/respondent Chief Administrative Judge Anne Pfau dated April 1, 2011, and substituting therefor a provision denying that branch of the cross motion, (2) by deleting the provision thereof denying that branch of the plaintiff/petitioner's motion which was for summary judgment declaring that the plaintiff/petitioner is entitled to receive the difference between $135,374 and the compensation she actually received during the period of April 1, 2011, through March 29, 2012, and annulling the related portion of the determination of the defendant/respondent Chief Administrative Judge Anne Pfau dated April 1, 2011, and substituting therefor a provision granting that branch of the motion, and (3) by deleting the second and third decretal paragraphs of the order and judgment; as so modified, the order and judgment is affirmed, with costs to the plaintiff/petitioner, and the matter is remitted to the Supreme Court, Westchester County, for the entry of an appropriate amended order and judgment, adding declarations that the plaintiff was entitled, pursuant to chapter 276 of the Laws of 2008, to a lump sum payment of her salary increases, which had been deferred for the period beginning on April 1, 2008, and ending on March 31, 2011, and that the plaintiff was also entitled to receive the difference between $135,374 and

the compensation she actually received during the period beginning on April 1, 2011, and ending on March 29, 2012.

Initially, the appeal by the defendants/respondents from the order entered July 6, 2012, must be dismissed as abandoned (see 555 W. John St., LLC v Westbury Jeep Chrysler Dodge, Inc., 149 AD3d 796 [2d Dept 2017]), as the brief they submitted does not request reversal or modification of any portion of that order.

In 2008, the New York State Legislature enacted chapter 276 of the Laws of 2008 (hereinafter chapter 276), which called for a deferral of any increases to salaries in excess of $115,000 for nonjudicial officers or employees of the defendant/respondent New York State Unified Court System (hereinafter the UCS), until a law was passed increasing the annual salaries of Supreme Court Justices to an amount greater than $136,700, or March 31, 2011, whichever occurred first (see ch 276, § 6). Chapter 276, § 6 provided that on the date the deferral ended, "the basic annual salary of the affected employee . . . shall be adjusted to equal such amount as it would have equaled on such date had there been no deferral" and "as soon as practicable thereafter, such employee . . . shall be entitled to a lump sum payment for the difference between the compensation to which he or she would have been entitled had there been no deferral and the compensation he or she actually received during the period of the deferral." Chapter 276, § 7 further provided, however, that "any increase in compensation, including increases in basic annual salary, increments or partial increments, or bonuses, provided by sections three, four, five and six of this act or otherwise authorized by law: (a) may be withheld in whole or in part from any nonjudicial officer or employee not in a collective negotiating unit when in the opinion of the chief administrator, such increase is not warranted or is not appropriate."

In 2008, when chapter 276 was enacted, the plaintiff/petitioner (hereinafter the plaintiff) was earning an annual salary of $115,299, at a salary grade of JG-30. Her salary would have increased to $122,321 in April 2008; $125,991 in April 2009; and $131,032 in April 2010. In November 2010, while the salary cap was still in effect, the plaintiff was appointed as the Westchester County Commissioner of Jurors, at a salary grade of JG-32. Upon that appointment, the plaintiff normally would have earned $135,374. However, her salary remained capped at $115,299.

Pursuant to chapter 276, § 6, the deferral period ended on March 31, 2011, because the annual salaries of Supreme Court

Justices remained unchanged. By letter dated April 1, 2011 (hereinafter the 2011 Letter), the defendant/respondent Chief Administrative Judge Anne Pfau (hereinafter the CAJ) notified the plaintiff that, "in light of the fiscal crisis, we are unable to lift the cap on managerial salaries this year."

In July 2011, the plaintiff commenced this hybrid action and proceeding against the UCS and the CAJ (hereinafter together the defendants), seeking, inter alia, a judgment declaring that she was entitled to a lump sum payment in the amount of her salary that had been deferred for the period of April 1, 2008, through March 31, 2011, plus the amount of a salary increase effective April 1, 2011, as well as a judgment pursuant to CPLR article 78 vacating and annulling the CAJ's determination in the 2011 Letter that the plaintiff's salary should remain capped at $115,299.

Thereafter, on January 16, 2013, the salary cap was lifted, retroactive to March 29, 2012, and the plaintiff's annual salary was increased to $135,559, at a salary grade of JG-32. It is undisputed that the plaintiff received a lump sum payment for the pay differential for the period beginning on April 1, 2012, and ending on January 16, 2013. However, the plaintiff never received a lump sum payment of her deferred pay for the period beginning on April 1, 2008, and ending on March 31, 2011, or payment of the salary differential for the period beginning on April 1, 2011, and ending on March 29, 2012.

The plaintiff subsequently moved for summary judgment on the amended complaint/petition, and the defendants cross-moved for summary judgment dismissing the amended complaint/petition and the proceeding. In an order and judgment entered August 29, 2014, the Supreme Court granted the plaintiff's motion in part. The court awarded the plaintiff only "a lump sum payment to be paid forthwith for the difference between the compensation to which she would have been entitled and the compensation she actually received during the period of deferral between April 1, 2008, and March 31, 2011," and, in effect, annulled the related portion of the CAJ's determination in the 2011 Letter. The court also granted the defendants' cross motion in part. The court dismissed so much of the amended complaint/petition as sought to recover payment for "the difference between the compensation to which [the plaintiff] would have been entitled and the compensation she actually received during the period [between] April 1, 2011, and March 29, 2012." Further on the cross motion, the court determined that a rational basis existed for the CAJ's determination to withhold the plaintiff's salary increase from April 1,

2011, through March 29, 2012, and, in effect, denied so much of the amended complaint/petition, and dismissed so much of the proceeding as sought to annul the related portion of the CAJ's determination. The plaintiff appeals, and the defendants cross-appeal, from the order and judgment.

Two related questions are presented. The first concerns the statutory interpretation of sections 6 and 7 of chapter 276. The second concerns the effect of the 2011 Letter in light of the defendants' authority under chapter 276.

"Any statute or regulation . . . must be interpreted and enforced in a reasonable . . . manner in accordance with its manifest intent and purpose" (*Matter of Sabot v Lavine*, 42 NY2d 1068, 1069 [1977]). "[W]hen presented with a question of statutory interpretation, [the court's] primary consideration is to ascertain and give effect to the intention of the Legislature" (*Samiento v World Yacht Inc.*, 10 NY3d 70, 77 [2008] [internal quotation marks omitted]). In that regard, "because the statutory text is the clearest indicator of legislative intent, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof" (*Hakimi v Cantwell Landscaping & Design, Inc.*, 50 AD3d 848, 850 [2008] [internal quotation marks and brackets omitted]; *see Matter of Carver v Nassau County Interim Fin. Auth.*, 142 AD3d 1003, 1007 [2016]). "When the plain language of the statute is precise and unambiguous, it is determinative" (*Matter of Washington Post Co. v New York State Ins. Dept.*, 61 NY2d 557, 565 [1984]). "Moreover, a statute must be construed as a whole, with all parts being read and construed together" (*Matter of New York Med. & Diagnostic Ctr., Inc. v Shah*, 116 AD3d 862, 864 [2014], citing *New York State Psychiatric Assn., Inc. v New York State Dept. of Health*, 19 NY3d 17, 23-24 [2012]).

Applying these principles to the language of chapter 276, we conclude that the defendants were without authority, pursuant to chapter 276, § 7, to deprive the plaintiff of wages that had already been earned but remained unpaid as a result of the salary cap imposed by chapter 276, § 6. Indeed, chapter 276, § 6 explicitly provides that when the deferral period ends, not later than March 31, 2011, "as soon as practicable thereafter," each affected employee *"shall be entitled to a lump sum payment* for the difference between the compensation to which he or she would have been entitled had there been no deferral and the compensation he or she actually received during the period of the deferral" (emphasis added).

Although section 7 of chapter 276 provides that the CAJ may

withhold "any increase in compensation . . . when in the opinion of the [CAJ], such increase is not warranted or is not appropriate," we do not read such provision so broadly as to permit the CAJ to deprive the plaintiff of deferred salary that had already been earned but remained unpaid. Apart from the fact that the broad interpretation pressed by the defendants is not supported by the plain language of section 7, we must also be mindful that the plaintiff has a property interest in earned wages (*compare Cheeseman v Carey*, 485 F Supp 203, 218 n 24 [SD NY 1980] ["A person's earned salary has always been among the property interests protected by the Constitution"], *with McRae v New York State Thruway Auth.*, 2016 WL 4179990, *4, 2016 US Dist LEXIS 103105, *12-13 [ND NY, Aug. 5, 2016, No. 1:15-CV-0991 (LEK/TWD)] [no protected property interest in a discretionary salary increase], *and Leventhal v Knapek*, 266 F3d 64, 77 [2d Cir 2001] [same]), and this Court must favor an interpretation of section 7 that will preserve the statute's validity (*see People v Finkelstein*, 9 NY2d 342, 345 [1961]; McKinney's Cons Laws of NY, Book 1, Statutes § 150).

Upon the expiration of the statutory salary cap on March 31, 2011, by application of the plain terms of chapter 276, § 6, the plaintiff became entitled to receive a lump sum payment for the difference between the compensation to which she would have been entitled had there been no deferral and the compensation she actually received during the period of deferral. The 2011 Letter, which was sent to the plaintiff *after* she had already earned the salary previously deferred pursuant to chapter 276, § 6, was ineffective to deprive the plaintiff of her earned wages. Therefore, the Supreme Court properly determined that the plaintiff was entitled to a lump sum payment of the salary increases that had been deferred for the period beginning on April 1, 2008, and ending on March 31, 2011.

The only remaining question, then, is the prospective impact of the 2011 Letter with respect to the plaintiff's salary for the period beginning on April 1, 2011, and ending on March 29, 2012. At the outset, in addition to the lump sum payment of deferred compensation discussed above, upon the expiration of the statutory salary cap on March 31, 2011, we note that the plaintiff was also entitled, under chapter 276, § 6, to the automatic adjustment of her salary from $115,299 to $135,374. Therefore, by application of the plain language of section 6, the plaintiff's basic annual salary, as of March 31, 2011, was adjusted to $135,374. The defendants contend, in effect, that under chapter 276, § 7, they had the authority to nullify the salary adjustment contemplated by chapter 276, § 6 and

continue to cap the plaintiff's salary at $115,299 from April 1, 2011, until March 29, 2012. We disagree.

We do not read chapter 276, § 7 as allowing the defendants to nullify the statutory salary adjustment contemplated in chapter 276, § 6, which took effect in accordance with its terms on March 31, 2011, just before the 2011 Letter was issued. Chapter 276, § 7 allows only for the withholding of salary *increases,* including increments and bonuses. Here, the only salary *increase* that would have taken effect on April 1, 2011 (the date of the 2011 Letter), was the difference between $135,374 and $135,559, i.e., $185.

The CAJ had the authority, under chapter 276, § 7, to withhold the plaintiff's scheduled $185 salary increase for the period beginning on April 1, 2011, and ending on March 29, 2012, and such authority is rationally related to the legitimate government purpose of protecting the State's fiscal well-being and should not be annulled (*see e.g. Levine v Paterson,* 2011 WL 4593739, 2011 US Dist LEXIS 112803 [ND NY, Sept. 30, 2011, No. 1:10-cv-1007 (NAM/DRH)]; *Matter of Gilligan v Stone,* 20 AD3d 697, 699 [2005]; *Matter of Altruda v Forsythe,* 184 AD2d 881 [1992]; *Matter of Shattenkirk v Finnerty,* 97 AD2d 51 [1983], *affd* 62 NY2d 949 [1984]).

The plaintiff contends that the withholding of her salary increase for the period of April 1, 2011, through March 29, 2012, while certain other employees, including three graded, unrepresented nonjudicial employees, received salary increases effective April 1, 2011, was arbitrary and capricious and violated the Equal Protection Clauses of the State and Federal Constitutions. These contentions are without merit. "For equal protection purposes, the appropriate standard for judicial review of a regulation, absent a suspect classification, is that it be sustained unless it bears no rational relation to a legitimate government interest" (*Matter of Shattenkirk v Finnerty,* 97 AD2d at 55; *see Bertoldi v State of New York,* 275 AD2d 227, 229 [2000]; *Matter of McDermott v Forsythe,* 188 AD2d 173, 175-176 [1993]). "Particularly in matters concerning the State's budget, equal protection does not require that all classifications be made with mathematical precision" (*Matter of Tolub v Evans,* 58 NY2d 1, 8 [1982]; *see Abberbock v County of Nassau,* 213 AD2d 691, 692 [1995]; *Matter of McDermott v Forsythe,* 188 AD2d at 175-176; *Matter of Shattenkirk v Finnerty,* 97 AD2d at 56). Moreover, "[t]he general principle of 'equal pay for equal work' need not be applied in all circumstances" (*Abberbock v County of Nassau,* 213 AD2d at 692, quoting *Matter of Shattenkirk v Finnerty,* 97 AD2d at 56). Contrary to the

plaintiff's contention, the evidence established that she was not similarly situated to those employees who received a salary increase after the deferral ended (*see e.g. Matter of Kapell v Incorporated Vil. of Greenport*, 63 AD3d 940, 941-942 [2009]; *Abberbock v County of Nassau*, 213 AD2d at 691-692; *Matter of Altruda v Forsythe*, 184 AD2d 881 [1992]; *Matter of Shattenkirk v Finnerty*, 97 AD2d at 58-59). In addition, the statute authorized the CAJ to withhold salary increases "from any nonjudicial officer or employee not in a collective negotiating unit" (ch 276, § 7), and the plaintiff failed to demonstrate that the CAJ's actions were "so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that [her] actions were irrational" (*Abberbock v County of Nassau*, 213 AD2d at 692).

We also reject the plaintiff's contention that the State's "fiscal crisis" cannot provide a rational basis for the CAJ's decision to withhold her salary increase on the grounds that other employees received increases in compensation, the UCS had appropriated sufficient funds to pay her salary increase, and, during that time, the UCS was expending millions of dollars on new programs. "[I]t is well settled that in matters concerning the allocation of the public fisc, the courts are to refrain from reviewing the wisdom or propriety of such decisions" (*Bertoldi v State of New York*, 275 AD2d at 229; *see Matter of McDermott v Forsythe*, 188 AD2d at 175; *Matter of Shattenkirk v Finnerty*, 97 AD2d at 59).

The plaintiff's contention that she had a contractual and vested property right in her salary increase and that the CAJ's determination to withhold her salary increase violated the Contracts, Takings, and Due Process clauses of the United States Constitution is without merit. Unlike the plaintiff's interest in earned wages, the plaintiff did not have a protected property interest in a prospective salary increase, which could be withheld as "not warranted" or "not appropriate" in the opinion of the CAJ (ch 276, § 7; *see Leventhal v Knapek*, 266 F3d at 77; *McRae v New York State Thruway Auth.*, 2016 WL 4179990, *4, 2016 US Dist LEXIS 103105, *12-13).

Accordingly, the defendants properly withheld the plaintiff's scheduled salary increase of $185, which would otherwise have taken effect beginning on April 1, 2011. However, the defendants were not authorized, under chapter 276, § 7, to nullify the effect of the automatic salary adjustment provision of chapter 276, § 6, whereby the plaintiff's salary was automatically adjusted to $135,374 as of March 31, 2011. Therefore, the Supreme Court erred in failing to grant the plaintiff's motion

to the extent of declaring that the plaintiff is entitled to the difference between $135,374 (i.e., her adjusted salary as of March 31, 2011, pursuant to chapter 276, § 6), and the compensation she actually received during the period beginning on April 1, 2011, and ending on March 29, 2012.

The plaintiff's remaining contention is without merit (*see Matter of New York State Clinical Lab. Assn. v Kaladjian*, 85 NY2d 346, 355 [1995]).

As this is, in part, a declaratory judgment action, we remit the matter to the Supreme Court, Westchester County, for the entry of an amended order and judgment, adding declarations that the plaintiff was entitled, pursuant to chapter 276, § 6, to a lump sum payment of her salary increases, which had been deferred for the period beginning on April 1, 2008, and ending on March 31, 2011, and that the plaintiff was also entitled to receive the difference between $135,374 and the compensation she actually received during the period beginning on April 1, 2011, and ending on March 29, 2012 (*see Lanza v Wagner*, 11 NY2d 317, 334 [1962]). Rivera, J.P., Chambers, Austin and Brathwaite Nelson, JJ., concur.